IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ANGELA LUSHER,

                              Plaintiff,

              vs.                                    Civil Action No.
                                                     7:05-CV-1110 (DNH/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

APPEARANCES:                            OF COUNSEL:

FOR PLAINTIFF:

CONBOY, McKAY LAW FIRM                  LAWRENCE D. HASSELER, ESQ.
307 State St.
Carthage, NY 13619

FOR DEFENDANT:

HON. GLENN T. SUDDABY                   WILLIAM H. PEASE, ESQ.
United States Attorney for the          Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261-7198

OFFICE OF GENERAL COUNSEL               BARBARA L. SPIVAK, ESQ.
Social Security Administration          Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278                      JOHN M. KELLY, ESQ.
                                        Assistant Regional Counsel


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Angela Lusher, whose claim on behalf of her daughter, HJ, for child's supplemental security income ("SSI") benefits under the Social Security Act was denied following an administrative hearing, has commenced this proceeding pursuant to 42 U.S.C. § 405(g) seeking judicial determination of that denial.  In her appeal, plaintiff asserts that the determination of the administrative law judge ("ALJ") assigned by the agency to hear and determine the matter, to the effect that her daughter was not disabled at the relevant times, is not supported by substantial evidence, and that HJ's condition meets, or at a minimum is functionally equivalent to, one or more of the listed, presumptively disabling conditions set forth in the controlling regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Having carefully reviewed the record in light of the plaintiff's arguments, I find that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.  Accordingly, I recommend that the determination be affirmed, and plaintiff's complaint in this action dismissed.

I.    <u>BACKGROUND</u>

HJ was born in 2001; at the time of the administrative hearing in this matter, the material portion which was held on May 26, 2004, she was

approximately thirty-two months old.[1]  AT 94, 394.  HJ lives in an

apartment in Carthage, New York together with her mother, who does not

work outside of the home, and two siblings, ages eight and eleven.  AT

400, 402-04.

In the relatively short period since her birth, HJ has been diagnosed

as suffering from one or more physical impairments, and has experienced

discernable delays in her development.  Plaintiff's physical conditions

began manifesting themselves only three weeks after her birth, when her

treating pediatrician, Dr. Ronald G. Perciaccante, noted her difficulty in

retaining food.  AT 194.  Since then, HJ has received continuous care and

treatment including in April of 2002, and again in February, 2004, and has

been diagnosed as suffering from gastroesophageal reflux and

vesicoureteral reflux.[2]  *See* AT 202, 204-05.  The claimant has been

prescribed medication to control her gastroesophageal condition, including

Zantac and Reglan, and additionally has been administered antibiotics,

---

[1]     Portions of the administrative transcript, filed by the
Commissioner and consisting of a compilation of evidence and proceedings before the
agency, Dkt. No. 9, will be cited hereinafter as "AT ___."

[2]     Gastroesophageal reflux involves reflux of the stomach and duodenal
contents into the esophagus.  Dorland's Medical Dictionary 1640 (31st ed. 2007).
Vesicoureteral reflux, in contrast, is a medical condition pertaining to the urinary
bladder and involving the retrograde flow of urine from the bladder to the ureter and the
kidneys.  *Id.*

including Bactrim, at various times in order to control or prevent kidney infection.[3]  AT 195, 205.

At the age of one year, HJ was referred through an early intervention program maintained under the auspices of the Jefferson County Community Services Department to Milestones Pediatric Therapy, PPLC for evaluation.  AT 219, 404-06.  That referral resulted, in part, from the plaintiff's concern over her daughter's delayed speech development.  AT 219.  That evaluation disclosed age-appropriate deficits in several areas, including cognitive, receptive language, expressive language, total language, gross motor, and total motor, and recommended speech-language support as well as physical therapy to address HJ's gross motor development.  AT 219-25.  To address the claimant's deficiencies in the two general areas, speech and language therapy were provided by Amy Sylvester, M.A., beginning in October of 2002, *see* AT 274, and special education services were provided by Kerri Hoselton, BS, of Milestones Pediatric, both apparently retained by the Jefferson County Community Services Department.  AT 283.  According to the plaintiff, at the time of the hearing in this matter her daughter received two forty-five minute sessions

---

[3]     HJ's gastroesophageal reflux seems to have abated over time, and does not provide a basis for her claimed disability.  *See* AT 50.

of occupational therapy weekly, and speech therapy one time each week, also for forty-five minutes; however, she had been discharged from the special education program.  AT 410-13.  Those services were provided in accordance with an individualized family service plan ("IFSP"), prepared for HJ's family in October of 2002.  AT 133-37.

By all accounts, HJ benefitted considerably from these early intervention services provided through the county.  In March of 2003, at the age of eighteen months, HJ was tested, including through use of the Hawaii Early Learning Profile ("HELP"), resulting in a finding that she had made great progress with the assistance of her special education instructor.  AT 252-54.  It was noted in the report of that evaluation that HJ had demonstrated age-appropriate fine motor skills, and was functioning in the twelve to fifteen month age range, in the area of self-help, though with some emerging skills at a higher level.  *Id.*  HJ's cognitive skills were noted to have improved and were determined to be within the fourteen to fifteen month age range, again with some skills ranging in higher levels.  AT 253. Socially and emotionally, that evaluation revealed that HJ was solidly within the twelve to fifteen month age range, again with some areas in which she scored higher.  *Id.*

_____HJ's physical abilities were also re-evaluated at the eighteen month

level.  AT 259-60.  That testing revealed that with few exceptions, HJ's physical abilities were age-appropriate.  *Id.*

Subsequent evaluations at various intervals have confirmed HJ's progress in both her physical condition and in other areas.  In September of 2003, HJ's physical therapy was discontinued based upon the therapist's reports that she had reached age-appropriate gross motor skill levels.  AT 272.  A subsequent evaluation was conducted in February of 2004, by HJ's occupational therapist, who noted that her grasping skills were at a twenty-one month equivalent, and affixed her visual motor skills at a twenty-six month equivalent and fine motor skills at age twenty-three months.  AT 332-33.

A speech therapy evaluation performed on February 14, 2004, at the age two years and five months, revealed HJ's total language skills were at a two year, eight month age equivalent, while her expressive communication level was assessed at two years and one month, placing her in the eighty-second and thirty-seventh percentiles, respectively.  AT 340.

II.    PROCEEDINGS BEFORE THE AGENCY

Plaintiff filed a formal application for SSI benefits on behalf of her daughter on August 21, 2002, asserting a disability onset date of April 5,

2002.[4]  AT 91-93.  Following the denial of that application on October 24,

2002, AT 58, a hearing was conducted, beginning on February 5, 2004

and later adjourned to May 26, 2004, by ALJ John M. Lischak to address

plaintiff's claim for benefits on behalf of her daughter.  *See* AT 378-415.

Following the conclusion of the administrative hearing, ALJ Lischak

issued a written decision, dated December 23, 2004, addressing plaintiff's

request for SSI benefits on behalf of her daughter.  AT 49-55.  Based upon

his *de novo* review of the record, and applying the established three step

test for determining eligibility for children's benefits under the Act, ALJ

Lischak first concluded that HJ had not engaged in substantial gainful

activity since the alleged onset of her disability.  AT 54.  At step two of the

governing analysis, ALJ Lischak concluded that HJ's learning delays

and vesicoureteral reflux constituted impairments of sufficient severity to

cause more than minimal restrictions on her ability to function and which

have lasted or can be expected to last at least twelve months, but that

those impairments do not meet or medically equal the level of severity of

any of the listed, presumptively disabling conditions set forth in the

governing regulations.  AT 51.

---

[4]     Plaintiff's application for SSI benefits was protectively filed on June 13,
2002.  AT 90.

Proceeding to the third step, examining the issue of functional equivalency, ALJ Lischak considered each of the six focal areas in the functional equivalency calculus.  AT 51-54.  Based upon the record before him, ALJ Lischak found no extreme or marked limitations in any of the six relevant domains, specifically rejecting plaintiff's allegations of disabling symptomology on the part of her daughter as lacking clinical support in the record.  AT 53-54.  ALJ Lischak therefore concluded that HJ is not disabled and, accordingly, ruled her ineligible for SSI benefits.  AT 54-55.  ALJ Lischak's opinion became a final determination of the Commissioner on August 16, 2005, when the Social Security Administration Appeals Council denied plaintiff's request for review of that decision.  AT 6-8.

B.  <u>This Action</u>

Plaintiff commenced this action on September 2, 2005.  Dkt. No. 1.  Issue was thereafter joined on January 31, 2006 by the Commissioner's filing of an answer, accompanied by an administrative transcript of the proceedings and evidence before the agency.  Dkt. Nos. 8, 9.  With the filing of plaintiff's brief on March 2, 2006, Dkt. No. 10, and that on behalf of the Commissioner on April 6, 2006, Dkt. No. 12, the matter is now ripe for determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(1)(B) and Northern

District of New York Local Rule 72.3(d).[5]  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Veino v. Barnhart,* 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir. 1987)).   Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 148.  If, however, the correct legal standards have been applied and the ALJ's

---

[5]    This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S. Ct. 206, 216-17 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427; *Martone*, 70 F. Supp. 2d at 148 (quoting *Richardson*).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 715 S. Ct. 456, 464

(1951).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed. 42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148. In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning. *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980)). A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level. *See Lisa v. Sec'y of Dep't of Health and Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991). Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency. *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health and Human Servs.,* 705 F.2d 638, 644 (2d Cir. 1983).

B.   <u>Childhood Disability Determination:  The Three-Step</u>

11

Evaluation Process

In 1996 Congress significantly altered the childhood disability terrain for purposes of eligibility for SSI benefits under the Social Security Act by enacting the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA").  Pub. L. No. 104-193, 110 Stat. 2105 (1996).[6] In accordance with the PRWORA, which took effect on August 22, 1996, an individual under the age of eighteen is disabled, and thus eligible for SSI benefits, if he or she

> has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).  That definitional provision goes on to exclude from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity. . . ."  42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability.  20 C.F.R. § 416.924; *Kittles v. Barnhart,*

---

[6]     Entitlement to SSI benefits is governed by a federal program intended to provide benefits to needy aged, blind, or disabled individuals who meet certain statutory income and resource limitations.  42 U.S.C. § 1381; *see Schweiker v. Wilson*, 450 U.S. 221, 223, 101 S. Ct. 1074, 1077 (1981).

245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, 02Civ.3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003) (Gorenstein, M.J.), *adopted*, No. 02 Civ. 3127, Dkt. No. 18 (S.D.N.Y. July 25, 2003) (Preska, D.J.).  The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity.  20 C.F.R. § 416.924(b); *Kittles,* 245 F. Supp. 2d at 488.  If so, then both statutorily and by regulation the child is ineligible for SSI benefits.  42 U.S.C. § 1382c(a)(3)(c)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are severe – that is, they cause more than a minimal functional limitation.  20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7.  If the existence of a severe impairment is discerned, the agency must next determine whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "listings").  *Id.*  Equivalence to a listing can be either medical or functional.

20 C.F.R. § 416.924(d); *Kittles,* 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7.  If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Under final regulations which became effective on January 2, 2001, and materially altered the test dictated under the superceded interim rules, *see, e.g., Kittles*, 245 F. Supp. 2d at 488-89, analysis of functionality is informed by consideration of how a claimant functions in six main areas denominated as "domains."  20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8.  The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do."  20 C.F.R. § 416.926a(b)(1).  Those prescribed domains include

      (i)     [a]cquiring and using information;
      (ii)    [a]ttending and completing tasks;
      (iii)   [i]nteracting and relating with others;
      (iv)   [m]oving about and manipulating objects;
      (v)    [c]aring for [oneself]; and
      (vi)   [h]ealth and physical well-being.

20 C.F.R. § 416.926a(b)(1).  A finding of disability is warranted if a "marked" limitation is found in any two of the listed domains.  20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8.  A "marked limitation"

exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). Functional equivalence is obtained in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

C.    The Evidence In This Case

In support of her challenge to the ALJ's determination of no disability plaintiff raises three contentions, arguing that 1) HJ's condition meets the criteria of Listing § 112.02; 2) the ALJ's conclusion that plaintiff's condition is not medically or functionally equivalent to a listed impairment is unsupported; and 3) in arriving at his determination the ALJ improperly rejected the testimony of HJ's mother regarding her observations of her daughter's growth and behavior.

1.    Listed Impairment

By regulation, the Commissioner has set forth a series of listed impairments describing a variety of physical and mental conditions,

15

indexed according to the body system affected.[7]  20 C.F.R. Pt. 404, Subpt. P, App. 1; *see Sullivan v. Zebley*, 493 U.S. 521, 529-30, 110 S. Ct. 885, 890-91 (1990).  For both adults and children, the listed impairments are presumptively disabling – that is, "if an applicant satisfied the Listings, the applicant was presumed to be disabled, and did not have to prove 'whether he [or she] actually can perform his [or her] own prior work or other work.'" *Colon v. Apfel*, 133 F. Supp. 2d 330, 338 (S.D.N.Y. 2001) (quoting *Sullivan*, 493 U.S. at 532, 110 S. Ct. at 892).  Additionally, for children, the listings provide "a means to efficiently and equitably evaluate the more common impairments."  *Sullivan*, 493 U.S. at 535, 110 S. Ct. at 893-94.

Meaningful review by the court of the ALJ's rejection of the listed impairments in this case is severely hampered by the cursory nature of his discussion of the subject and the lack of any explanation as to the specific listings considered, and the reasons for finding that HJ's condition does not meet them.  This failure, while unfortunate, does not preclude the court

---

[7]       The listings are broken down into fifteen categories, including growth impairment, musculoskeletal system, special senses and speech, respiratory system, cardiovascular system, digestive system, genitourinary impairments, hematological disorders, skin disorders, endocrine system, impairments that affect multiple body systems, neurological, mental disorders, malignant neoplastic diseases, and immune system.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

from upholding the ALJ's decision provided it is convinced that the ultimate

conclusion is supported by substantial evidence in the record.  *Berry v.*

*Schweiker,* 675 F.2d 464, 468-69 (2d Cir. 1982); *see also Jones v.*

*Barnhart,* 364 F.3d 501, 503-06 (3d Cir. 2004).

In this instance the listing urged by the plaintiff as having applicability

to HJ's condition is Listing § 112.02, which addresses organic mental

disorders.  Plaintiff's brief, which vigorously argues that HJ's condition

satisfies the requirements of parts A and B of Listing § 112.02,

conspicuously overlooks the preambulatory language defining its

coverage.[8]  That language defines the organic mental disorders to which

the listing applies as follows:

> Abnormalities in perception, cognition, affect, or
> behavior associated with dysfunction of the brain.
> The history and physical examination or laboratory
> tests, including psychological or
> neuropsychological tests, demonstrate or support
> the presence of an organic factor judged to be
> etiologically related to the abnormal mental state
> and associated deficit or loss of specific cognitive
> abilities, or affective changes, or loss of previously
> acquired functional abilities.

---

[8]      Proceeding to analyze the specific criteria of Listing 112.02, on an
assumption that the existence of an organic mental disorder has been established,
both parties have considered HJ's condition as most appropriately considered under
the portion of the section (B) criteria pertaining to infants under the age of three, even
though at the time of the ALJ's decision she was some thirty-nine months old.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.02.

In this instance there is no clinical evidence in the record to suggest that HJ suffers from such an organic mental impairment.  Dr. Kristen Barry, a consultative psychologist who examined HJ at age thirteen months, noted no history of psychiatric hospitalization or out-patient psychiatric treatment or counseling and, based upon her testing, found plaintiff's allegations not to be consistent with the results of her examination and thus rendered no Axis I or Axis II diagnosis, further recommending that HJ continue to receive early intervention services and medical treatment.  AT 243-45.  In a report dated October 22, 2004 Dr. Allan Rothenberg, a pediatric consultant, recorded his opinion that HJ does not suffer from any impairment or combination of impairments meeting or medically equalling, or functionally equivalent to, any listed impairment.  AT 369-70.  Out of the reports from Milestones Pediatric Therapy, PLLC which discerned developmental delays in certain areas, including with respect to HJ's motor skills, none identifies any diagnosed organic mental condition which would qualify for consideration under Listing 112.02.  *See, e.g,* AT 219-29.

Having found no evidence to suggest that HJ suffers from a diagnosed organic mental disorder, I conclude that the ALJ's determination – implicit in his opinion that HJ does not suffer from a

condition which satisfies the criteria of Listing 112.02 – is supported by substantial evidence.

2.    Medical Equivalence

Plaintiff next argues that HJ's condition medically equals the criteria in Listing § 112.02.  The focus of plaintiff's argument in this regard is a report setting forth findings by Milestones Pediatric Therapy, dated August 19, 2003.  *See* AT 262-65.  Plaintiff asserts that the report demonstrated that HJ is two standard deviations below the norm in the categories of low registration, sensory sensitivity, and sensation avoiding, AT 263-64, asserting that this establishes the existence of a marked limitation.

A child's impairment or combination of impairments is medically equivalent to a listed impairment if the medical findings are at least equal in severity and duration to the listed findings.  20 C.F.R. § 416.926(a).  In determining whether an impairment medically equals a listing, all record medical evidence, as well as the opinions of agency medical or psychological consultants, are considered; however, vocational factors such as age, education, and work experience are not reviewed.  20 C.F.R. § 416.926(c); *see also Prentice v. Apfel*, No. 96CV851, 1998 WL 166849, at *4 (N.D.N.Y. 1998) (Pooler, D.J.) ("Medical equivalence is based upon medical evidence only . . . .").

19

Plaintiff's argument in this regard relies heavily upon a single analysis revealing plaintiff to be two standard deviations below the norm with respect to auditory processing, tactile processing, vestibular processing and oral sensory processing, as well as one standard deviation below normal with respect to visual processing.  AT 264-65.  These findings, however, are based upon an evaluation conducted at age twenty-three months, and are at odds with later reports revealing significant progress in those areas.  By way of example, a mere two months later, HJ's occupational therapist reported that HJ was "loving all of the sensory input she is given during her treatment sessions."  AT 325.  By February 10, 2004, HJ was making continued progress, and was functioning at more than two-thirds her chronological age.  AT 332.  Additionally, in March of 2004, despite having some difficulties cooperating during therapy sessions, upon engaging her occupational therapist HJ performed quite well at each task presented to her.  AT 335-36.  These subsequent reports indicate that while HJ experienced delays in sensory processing, her conditions improved markedly with continued occupational therapy.

Having reviewed criteria associated with Listing 112.02, and in particular the section (B) factors, I agree with the Commissioner that the medical evidence does not reveal, other than sporadically and certainly

not over the requisite duration, the deficiencies required to satisfy the

section (B) criteria. To be considered disabled, an infant's impairment

must have lasted or be expected to last for a continuous period of at least

twelve months.  *See* 42 U.S.C. § 1382c(a)(C)(1).  Because the clinical

evidence in the record does not reveal sufficient qualifying deficits

persisting over the requisite time period, the ALJ's determination that HJ's

condition does not meet or medically equal Listing 112.02 is supported by

substantial evidence.

3.   <u>Functional Equivalence</u>

Pivotal to the ALJ's decision regarding functional equivalence is his

finding that HJ did not suffer, at the relevant times, from marked or

extreme limitations in any of the six required domain areas.  Plaintiff

asserts that in the event her daughter's condition is not considered as

medically equivalent to Listing 112.02, functional equivalence is

nonetheless established based upon evidence in the record, utilizing the

prescribed six domain analysis.  In support of that argument plaintiff

argues that the record establishes marked limitations with respect to HJ in

each of the six critical domain areas.

a)   <u>Acquiring and Using Information</u>

During her hearing testimony, HJ's mother was specifically

21

questioned about this domain area, responding that her daughter did not experience difficulties in the acquisition and use of information.  AT 400. That answer is consistent with evidence in the record revealing, by way of example, that based on intelligence testing HJ was only mildly delayed and her speech and language skills are age-appropriate. AT 244.  On March 20, 2003, at eighteen months of age, HJ was evaluated, revealing that her cognitive skills had improved over the prior months and in that category she was in the fourteen to fifteen month age range, with scattered results at higher levels.  AT 253.  It was noted in her early intervention program enrollment summary, completed in 2003, moreover, that HJ's receptive language skills were an area of strength.  AT 143.

On February 11, 2004, at age twenty-nine months, HJ's cognitive skills were noted to be at the twenty-eight month level.  AT 338.  A speech therapy review performed on February 14, 2004, at age twenty-nine months, revealed total language skills at a two year eight month equivalent.  AT 340.  Both HJ's occupational therapist, Ms. Amell, and a state agency medical consultant, assessed HJ as suffering from no limitation in the area of acquiring and using information, AT 248, 343, and Dr. Rothenberg, another consultant, assessed her as suffering from a less than marked limitation in this area.  AT 371, 375.  Those results

22

adequately establish that the ALJ's determination that HJ suffers from a less than marked impairment in this area is supported by substantial evidence.

> b)      Attending and Completing Tasks

While plaintiff testified that this area presents a significant problem for her daughter, *see* AT 401, the evidence indicates otherwise.  Dr. Barry, an examining psychologist, described HJ's attention and concentration at thirteen months of age to be age-appropriate.  AT 244.  Dr. Barry also noted that HJ appears capable of following and understanding age-appropriate instructions and directions, and of completing age-appropriate tasks.  AT 244.  Both the state agency medical consultant and Dr. Rothenberg concluded that HJ has no limitation in this domain.  AT 248, 371, 375.  Accordingly, the ALJ's conclusion that HJ suffers from no limitations in this area is well-supported.

> c)      Interacting and Relating with Others

While there is clearly evidence in the record suggesting some degree of conflict between HJ and her parents, siblings, and peers, much of which might well be considered to be normal for her age, there is also considerable evidence suggesting that she does not have any marked limitation in this area.  On October 15, 2002, HJ was described in the IFSP

23

prepared for her by Jefferson County Community Services as social, outgoing, affectionate, and having a sense of humor.  AT 134.  On March 20, 2003, at age eighteen months, HJ demonstrated solid social/emotional skills in the twelve to fifteen month age, with scattered skills at the eighteen month range.  AT 253.  Later, at twenty-nine months of age, HJ's social and emotional skills were found to be at the twenty-six to twenty-eight month level.  AT 338.  Both state agency medical consultants and HJ's therapist, Ms. Amell, have noted their opinions that HJ suffers no limitation in the area of interacting and relating with others, and Dr. Rothenberg concluded that she suffers from a less than marked limitation in this domain. AT 248, 343, 371, 375.  Based upon these findings, I conclude that the ALJ's determination to the effect that HJ suffers from less than marked limitations in this area is supported by substantial evidence.

d)      <u>Moving About and Manipulating Objects</u>

Undeniably, at early stages HJ displayed some deficits in the area of motor skill development.  *See, e.g.,* AT 262-63.  Her physical therapist reported in September of 2003, at the age of two, however, that by then HJ had acquired age-appropriate gross motor skills.  AT 272.  On February 10, 2004, at age twenty-nine months, HJ's visual motor skills

24

were determined to be a twenty-six month age equivalent with her fine

motor skills trailing at a twenty-three month age equivalent.  AT 332.

Opinions addressing this issue range from those of the state agency

medical consultant, who in October of 2002 discerned no limitations in this

area, AT 249, to HJ's therapist, who in April 2004 noted that she suffers

from a marked (six month delay) limitation in fine motor skills, though was

age-appropriate in gross motor skills, AT 344, to Dr. Rothenberg, who on

October 22, 2004 opined that HJ has a less than marked limitation in this

domain.  AT 372, 375.   The ALJ's determination that HJ suffers from less

than marked limitation is this area is thus generally supported by

substantial evidence.

e)    <u>Caring for Oneself</u>

The evidence regarding HJ's ability to care for herself is similarly

mixed, and understandably reflects certain limitations that may indeed be

age-appropriate.  In her examination of HJ at age thirteen months, Dr.

Barry found no severe developmental delays.  AT 244.  At the age of

eighteen months, testing revealed that HJ was functioning in the twelve to

fifteen month age range in the area of self-help skills, with some emerging

skills developed to higher levels.  AT 252.  Plaintiff's therapist, Ms. Amell,

has opined that HJ has no limitations in this area.  AT 344.  In his

25

assessment, Dr. Rothenberg concluded that HJ has a less than marked limitation in this area.  AT 372, 375.  Accordingly, while there is evidence to the contrary, it was incumbent upon the ALJ to resolve any discrepancies, and because his determination is supported by substantial evidence in the record, the court is not now positioned to disturb that determination and reassess the conflicting evidence.  *See*, *e.g.*, *Rodriguez v. Apfel*, No. 98-CV-3617, 1998 WL 903608, at *7 (E.D.N.Y. Dec. 14, 1998).

f)      Health and Physical Well Being

It is evident from the record that from the time of her birth, HJ has suffered from physical impairments requiring medical attention and, on two occasions, hospitalization.  By all accounts, however, her physical condition has been stabilized through medication, *see* AT 53, 249, and there have been no episodes of kidney failure or elevated serum creatine levels.  AT 375.  Dr. Rothenberg, a state agency consultant, noted in October of 2004 that HJ had a normal renal scan, and that her reflux had approved with medication.  AT 375-76.  Nowhere in the evidence is there indication that HJ's physical condition has resulted in marked and severe limitations persisting for a continuous period of at least twelve months.  Accordingly, the ALJ's conclusion that HJ does not suffer from a marked or

26

extreme impairment in this domain is supported by substantial evidence.

In sum, consideration of the six specific prescribed domain areas reflects that the ALJ's determination to the affect that HJ does not suffer from marked or extreme limitations in any of them, is supported by substantial evidence, thus warranting a conclusion that her condition is not functionally equivalent to a listed impairment.

       4.   <u>Credibility</u>

In arriving at his determination, ALJ Lischak noted plaintiff's claims regarding her daughter's conduct and recounting her disabling symptomology.  Plaintiff contends that the ALJ's rejection of those assertions was neither properly explained nor supported by substantial evidence.

It is well within the discretion of the Commissioner to evaluate the credibility of a plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence.  *See Mimms v. Heckler*, 750 F.2d 180, 185-86 (2d Cir. 1984); SSR 97-7p, 1996 WL 374186 (S.S.A.).  "Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," all information submitted by a claimant concerning his or her symptoms must be considered.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  The

claimant's testimony alone carries independent weight; to require a claimant to fully substantiate his or her symptoms with "medical evidence would be both in abrogation of the regulations and against their stated purpose." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 207 (W.D.N.Y. 2005) (citing *Castillo v. Apfel*, No. 98 CIV. 0792, 1999 WL 147748, at *7 (S.D.N.Y. Mar. 18, 1999)).

The regulations proscribe a specific process that the ALJ is to follow in weighing a claimant's testimony.  The ALJ must first establish that there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms.  20 C.F.R. § 416.929(b).  If the ALJ finds such an impairment, the ALJ next evaluates the intensity and persistence of the symptoms to determine how the symptoms limit the claimant's functioning.  *Id.* § 416.929(c).

A claimant's testimony is entitled to considerable weight when it is consistent with and supported by objective clinical evidence demonstrating that the claimant has a medical impairment which one could reasonably anticipate would produce such symptoms.  *Barnett v. Apfel*, 13 F. Supp. 2d 312, 316 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony concerning the intensity, persistence, or functional limitations is not fully supported by clinical

evidence, the ALJ must consider additional factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of any symptoms; (3) precipitating and aggregating factors; (4) type, dosage, effectiveness, and side effects of any medications taken to relieve symptoms; (5) other treatment received; and (6) any other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject a claimant's subjective testimony.  *Martone,* 70 F. Supp. 2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  Although the ALJ is free to accept or reject such testimony, a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record."  *Williams*, 859 F.2d at 260-61 (citation omitted).  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  42 U.S.C. §405(g); *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).

ALJ Lischak rejected plaintiff's claims as unsubstantiated by clinical evidence in the record, including reports from Milestones Pediatric Therapy which reflect considerable progress on HJ's part as a result of the

29

Jefferson County Community Services early intervention program, as well as the consultative report of Dr. Rothenberg.  The basis for the ALJ's rejection in this regard is adequately stated, and draws ample support from substantial evidence in the record.

IV.   SUMMARY AND RECOMMENDATION

The claimant in this case, now six years old, unquestionably suffers from a physical impairment which has affected her since birth.  The evidence in the record, however, reveals that that impairment has been treated and is medically controlled, and does not substantially interfere with her ability to perform in the relevant areas under consideration in the disability analysis.  Turning to her development, the record discloses that as early as age one HJ was identified as having discernable delays in certain areas, including with respect to fine motor skills.  As a result of early intervention through contracts with the Jefferson County Community Services, however, HJ exhibited considerable progress in the areas of identified deficiencies, to the point where most if not all of her functioning is at age-appropriate levels.

Under the circumstances now presented, I conclude that the ALJ's finding that plaintiff's condition, while severe, does not meet or equal either medically or functionally, any of the listed presumptively disabling

30

impairments is supported by substantial evidence in the record.  Moreover, in arriving at that determination the ALJ properly rejected conflicting accounts from HJ's mother, and that rejection was both sufficiently explained and is supported by substantial evidence in the record. Accordingly, it is hereby

RECOMMENDED that the defendant's motion for judgment on the pleadings be GRANTED, the Commissioner's determination AFFIRMED, and plaintiff's complaint DISMISSED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of Court within ten (10) days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1) (2006); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:      February 29, 2008
            Syracuse, NY


David E. Peebles
U.S. Magistrate Judge